Filed 4/27/16  P. v. Henderson CA1/3
Received for posting 4/28/16
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MAUREEN MICHELLE HENDERSON,<br><br>        Defendant and Appellant. | A136659, A137648, A138616<br><br>(Humboldt County Super. Ct.<br> Nos. CR1202121S, CR1204898,<br> CR1301063) |

In these consolidated appeals, defendant Maureen Michelle Henderson challenges three separate orders in which the trial court determined she violated the terms of her postrelease community supervision (PRCS) as a result of failing to report to the probation department.  Defendant does not dispute that she failed to report but claims she never should have been placed on PRCS, which is a form of postrelease supervision for certain low-level felons that is administered by the county instead of the Department of Corrections and Rehabilitation.  (See Pen. Code,[1] § 3451, subd. (a).)

Defendant's claim that she should not have been placed on PRCS turns in part on the fact that she did not actually serve time in prison but instead was *deemed* to have served a prison term as a result of her civil commitment as a drug addict in the California Rehabilitation Center (CRC).  She argues that section 3451—which requires certain low-level felons to serve a term of PRCS upon release—only applies to persons who have actually served time in prison.  She also argues that the probation department failed to

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

acquire jurisdiction over her because she was not notified of any PRCS obligation and did not sign an agreement to participate in PRCS at the time she was released. Finally, she contends that, upon her release from CRC, she should have been sentenced under section 1170, subdivision (h), which was enacted as part of the 2011 Realignment Legislation addressing public safety (the Realignment Act).[2] The consequence of being sentenced under the Realignment Act is that defendant would have fully served her sentence free of further supervision, including being subject to PRCS.

The Attorney General contends the appeal is moot because the court terminated PRCS and ordered defendant released. Because we agree with the Attorney General that a reversal would have no practical effect, we shall dismiss the appeal.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

In 2004, defendant pleaded guilty to three counts of petty theft with three or more prior petty theft convictions (§ 666) and one count of marijuana possession (Health & Saf. Code, § 11357, subd. (a)). The court placed defendant on probation and sentenced her to a stipulated term of five years, with execution of the sentence suspended. After defendant admitted violating terms of her probation, the court terminated probation in February 2006 and ordered the five-year prison term executed. In late February 2006, the court vacated its order executing the sentence after receiving a stipulation that defendant fit the description of a person who is a narcotics addict or in danger of becoming one. The court again imposed but stayed execution of the five-year sentence, levied statutory fines, awarded custody credits, and committed defendant to CRC for treatment as an addict pursuant to Welfare and Institutions Code section 3051.

In December 2011, after serving almost 1,300 days at CRC, defendant moved to vacate her civil commitment and fix a determinate term. In March 2012, the court

---

[2]See Statutes 2011, chapter 15, section 1. Additional legislation enacted in 2011 amended the Realignment Act or otherwise affected its implementation. (See, e.g., Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1; Stats. 2011, ch. 39, § 1.)

[3]At the request of the Attorney General, we take judicial notice of the prior unpublished opinion in this matter. (*People v. Henderson* (Dec. 1, 2006, A113643) [nonpub. opn.].) The background facts are derived in part from the prior opinion.

2

executed the previously imposed five-year sentence and awarded defendant five years of custody credit. Consequently, defendant was deemed to have fully served her sentence as a result of the time she spent at CRC. The court then referred defendant to parole. The parole agent in turn referred defendant to the Humboldt County Probation Department (probation department) to report for PRCS. The probation department assumed supervision of defendant on March 26, 2012.

The probation department successfully contacted defendant on two occasions in April 2012. However, defendant failed to report to her probation officer on two subsequent reporting dates. In May 2012, the probation department filed its first petition to revoke defendant's PRCS based on her failure to report.

At a hearing conducted in July 2012, defendant agreed to enter a no contest plea to the violation of PRCS with the understanding that she would be reinstated on PRCS and receive no additional jail time. The plea was conditioned upon the court's determination that defendant had been legally placed on PRCS. Thus, if the court found that defendant had been legally placed on PRCS, she would be reinstated on PRCS with no additional jail time. However, if the court determined that PRCS was not lawfully imposed, then the no contest plea would be withdrawn and defendant would have no obligation to report for PRCS and would not be held liable for a violation of its terms.

The parties subsequently filed briefs addressing the legality of defendant's PRCS. Defendant argued that she was not required to report for PRCS because the statute mandating participation by low-level felons in PRCS (§ 3451, subd. (a)) only applies to persons who have been released from prison and not those released from CRC.

In September 2012, the trial court ruled against defendant and found that defendant was properly on PRCS after she was deemed to have served her five-year prison sentence. The court reinstated PRCS and gave defendant credit for the time served with no additional jail time required.

Defendant filed a timely notice of appeal from the September 2012 order in case number A136659. The trial court issued a certificate of probable cause on the issue of jurisdiction.

In October 2012, the probation department filed a second petition to revoke defendant's PRCS. Again, the petition was premised on allegations that defendant failed on multiple occasions to report to the probation department as required by the terms of her PRCS. In an amended petition, the probation department alleged as an additional ground for revocation that defendant had committed a misdemeanor drug possession offense. (Health & Saf. Code, § 11377, subd. (a).)

As in the earlier revocation proceeding, defense counsel argued that defendant was not properly placed on PRCS. Counsel acknowledged losing the issue previously but pointed out that the matter was on appeal in case number A136659. At a November 2012 hearing, defendant agreed to enter a no contest plea to the revocation petition and a guilty plea to the misdemeanor drug charge conditioned upon preserving her jurisdictional challenge to the imposition of PRCS. The court reinstated PRCS and sentenced defendant to serve 60 days in county jail with credit for 18 days served.

In March 2013, the probation department filed a third petition to revoke defendant's PRCS. As before, the petition was based in part on allegations that defendant failed to maintain contact with the probation department. It was also alleged that defendant had violated section 647, subdivision (f), which makes it a misdemeanor to be intoxicated in public. Pursuant to a negotiated disposition, at a hearing in April 2013 defendant admitted the violation of the terms of PRCS with the understanding the court would terminate PRCS. The court revoked and terminated PRCS pursuant to section 3455, subdivision (a)(2) and released defendant after giving her credit for the 16 days of jail time she had served.

Defendant filed timely notices of appeal from the November 2012 and April 2013 orders in case numbers A137648 and A138616. The trial court issued certificates of probable cause in each appeal.

At defendant's request, we consolidated the appeals in case numbers A136659, A137648, and A138616. While the appeals were pending, the Attorney General filed a motion to dismiss the appeals on the ground they had been rendered moot as a result of

4

the termination of defendant's PRCS. We denied the motion without prejudice and permitted the Attorney General to raise the issue of mootness in the briefing on appeal.

**DISCUSSION**

It is not the function of an appellate court to render an opinion upon moot questions or abstract principles of law, or to declare rules of law that can have no effect on the matter before the court. (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.) "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 454.) " '[A]n action that originally was based upon a judiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198.)

As noted above, following defendant's third violation of PRCS for failing to report to the probation department, the court terminated PRCS and ordered defendant released after giving her credit for the jail time she had served. The Attorney General argues that the appeal is moot because a reversal would have no practical effect. As we explain, we agree with the Attorney General.

Defendant has already completed her jail term and has had her PRCS terminated. The violations of PRCS can have no further effect upon her term of PRCS or pose the risk that she will serve some additional period of incarceration for further violations of her PRCS. The appeal is technically moot because our resolution of the issues raised by defendant can offer no effective relief to her. We cannot undo the jail time she has already served, and it would be pointless to vacate a term of PRCS that has already been terminated. Nevertheless, our inquiry is not at an end.

Defendant contends there are collateral consequences resulting from her violations of PRCS. Indeed, a mootness inquiry may include consideration of whether a successful appeal can eliminate or ameliorate disadvantageous collateral consequences that may otherwise result. (Cf. *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368–1369.) As

5

the Attorney General points out, performance on PRCS likely can be considered for purposes of deciding whether to grant probation in the event defendant is convicted of a new offense. (See Cal. Rules of Court, rule 4.414(b)(2) [listing prior performance on "probation or parole" as a factor in deciding to grant or deny probation]; see also *People v. Jones* (2014) 231 Cal.App.4th 1257, 1267–1268 [PRCS is similar to parole and merely modifies the agency that supervises the defendant upon release].) In addition, if defendant were to suffer a criminal conviction in the future, poor performance on PRCS could potentially be used as a circumstance in aggravation when considering the appropriate sentence to impose.[4] (Cf. Cal. Rules of Court, rule 4.421(b)(5).)

We are not persuaded that the potential use of defendant's PRCS violations as a sentencing factor in future criminal proceedings suffices to constitute "collateral consequences" for purposes of a mootness analysis, at least under the facts presented here. We are guided by the analysis in the United States Supreme Court's decision in *Spencer v. Kemna* (1998) 523 U.S. 1 (*Spencer*). There, the court addressed whether a challenge to an order revoking the respondent's parole was moot when the respondent had fully served the prison term imposed for the parole revocation. (*Id.* at p. 3.) In concluding that respondent's claim was moot, the United States Supreme Court observed that while a criminal conviction entails adverse collateral legal consequences, "[t]he same cannot be said of parole revocation." (*Id.* at p. 12.) The court reasoned that it was not enough that the parole violations could be used by the parole board to deny the petitioner

---

[4]Defendant contends her PRCS violations have an additional adverse consequence in that she suffered a misdemeanor drug possession conviction as a result of a search incident to an arrest for her violation of PRCS. Insofar as defendant suggests an order reversing her PRCS violations will have the effect of vacating her misdemeanor drug conviction, she is mistaken. As an initial matter, the drug possession conviction is not a part of this appeal. Further, even assuming the arrest warrant for a violation of PRCS was invalid, any evidence seized during the arrest would not be suppressed if the arresting officer relied on the warrant in objective good faith. (See *People v. Palmer* (1989) 207 Cal.App.3d 663, 665–666.) Because there was no objective reason to suspect the arrest warrant for a PRCS violation was invalid, defendant would have no grounds to attack her drug possession conviction or suppress the evidence supporting that conviction.

6

parole in the future. (*Id.* at p. 13.) According to the court, the violations were simply one factor that could be considered among many; the mere presence or absence of the recorded violation did not mandate a particular consequence. (*Ibid.*) Instead, the decision would necessarily be left to the discretion of the parole authority, which would likely place more emphasis on the nature of the parole violation instead of the mere fact parole had been revoked. (*Ibid.*)

Just as in *Spencer,* the challenged action here concerns revocation of a term of postrelease supervision—technically PRCS instead of parole—rather than a criminal conviction. Such a revocation does not entail the same adverse collateral consequences that accompany a criminal conviction. (See *Spencer, supra,* 523 U.S. at p. 12.) The revocation of PRCS, like the revocation of a period of probation or parole, is just one of many factors the court may consider in deciding whether to grant probation or to sentence a defendant in a subsequent criminal matter. (See generally Cal. Rules of Court, rules 4.414, 4.421.) Further, the court in any future criminal case would consider the circumstances underlying revocation of PRCS, probation, or parole. In this case, the behavior that led the probation department to seek to revoke defendant's PRCS on multiple occasions was not itself criminal. It was defendant's failure to report to her probation officer that prompted the filing of the revocation petitions. The court below apparently found it so insubstantial that it found no reason to continue defendant's PRCS or to require defendant to serve any additional jail time. There is no reason to believe that a sentencing court in any future criminal action against defendant would attach any greater weight to the PRCS violations.

Moreover, it strains credulity to suggest that defendant's trivial PRCS violations at issue in these appeals would have any bearing upon a future sentence in light of defendant's extensive criminal history. Defendant suffered her first criminal conviction in 1987 and has been convicted of numerous misdemeanors and felonies since then. Her record reflects numerous occasions on which either her probation or parole was revoked since the 1980's. As a person who has suffered at least two felony convictions, defendant would be presumptively ineligible for probation in any future criminal action. (§ 1203,

7

subd. (e)(4).) Consequently, the PRCS violations for failing to report to a probation officer would likely have no practical impact upon defendant's eligibility for probation or any potential sentence in the future. Under the circumstances, we conclude that the mere possibility defendant's minor PRCS violations might be mentioned as one of many sentencing factors in future criminal proceedings does not constitute disadvantageous "collateral consequences" for purposes of assessing mootness.

We also reject any suggestion that defendant must be afforded the opportunity to "rid herself of the stigma of criminality" that accompanies a criminal conviction. (*People v. Delong* (2002) 101 Cal.App.4th 482, 484.) Defendant was not convicted of a crime. Moreover, the conduct that caused the probation department to seek to revoke defendant's PRCS—i.e., her failure to report to her probation officer—was not criminal in nature. While her PRCS violations may not reflect well on her performance on postrelease supervision, defendant does not suggest she is somehow stigmatized by these minor PRCS violations or that she must be allowed to pursue her appeal in order to "clear her name." (*Ibid.*)

Finally, defendant argues that even if we conclude the appeal is moot, we should exercise our discretion to decide the appeal on the ground it raises issues of broad public interest that are likely to recur while evading review. (See *People v. Osorio* (2015) 235 Cal.App.4th 1408, 1411–1412 [exercising discretion to entertain moot appeal while acknowledging United States Supreme Court's mootness analysis in *Spencer*].) We decline to do so. There is no reason to believe these issues, if they arise again, will evade review. A person may be on PRCS for up to three years. (§ 3451, subd. (a).) That is ample time to challenge a court referral to PRCS after release from the CRC. Moreover, it is far from clear to this court that the circumstances of defendant's case are typical of persons released from CRC after having been deemed to serve a prison sentence. Her case dates back to 2004 and involves complicated procedural facts spanning the years before and after enactment of the Realignment Act. Among other things, one of the critical facts in defendant's case is that she agreed to a stipulated prison term as part of her guilty plea in 2004. Now, she seeks to rely on of the Realignment Act, which was

enacted long after her plea, in order to benefit from the more favorable treatment afforded to certain low-level felonies under that Act. (Cf. *People v. Scott* (2014) 58 Cal.4th 1415, 1419 [Realignment Act does not apply to defendant sentenced before Act's effective date to prison term with execution of sentence suspended pending completion of probation term].) In short, we are not convinced that this is an appropriate case in which to address the issues defendant has raised, even if we were to otherwise agree that these issues may arise in some context in other cases involving persons released from the CRC after having been deemed to serve a prison term.

## DISPOSITION

The appeal is dismissed.

_____
McGuiness, P.J.

We concur:


_____
Pollak, J.


_____
Siggins, J.

10